1  Ray Bourhis, Esq. SBN 53196
2  Kelly L. Cowan, Esq.  SBN 239635
   RAY BOURHIS & ASSOCIATES
3  1050 Battery Street
   San Francisco, CA 94111
4  Tel: (415) 392-4660
   Fax: (415) 421-0259
5
6  Attorneys for Plaintiff RANDALL M. WEST, D.O.
7
8            UNITED STATES DISTRICT COURT
9            NORTHERN DISTRICT OF CALIFORNIA
10
11  RANDALL M. WEST, D.O., ON BEHALF    )
12  OF HIMSELF AND ALL OTHERS           )   E-FILE
    SIMILARY SITUATED,                  )
13                                      )   Case No.: C-06-4517SI
                                        )
14          Plaintiffs,                 )
                                        )   STIPULATION FOR FILING SECOND
15      v.                              )   AMENDED COMPLAINT
                                        )
16  UNUMPROVIDENT CORPORATION,          )
17  UNUM LIFE INSURANCE COMPANY OF      )
    AMERICA, and DOES 1 through 20,     )
18  inclusive,                          )
                                        )
19          Defendants.                 )
20
21          IT IS HEREBY STIPULATED by and between the parties hereto through their
22  respective attorneys of record that Plaintiff may file a Second Amended Complaint, a
    copy of which is attached hereto.
23
24      *IT IS FURTHER STIPULATED that the Defendant has until September 29, 2006
25  to respond to the Second Amended Complaint.*
26  ///
27  ///
28  ///
    ///

                                1
         STIPULATION FOR FILING OF AMENDED COMPLAINT

1  Dated: _Sept 8, 2006,_ 2006        **KELLY, HERLIHY & KLEIN, LLP**

2

3

4          By: _Sean P Nalty_

5                Sean P. Nalty, Esq.
          Attorneys for Defendant UNUMPROVIDENT

6          CORPORATION

7

8  Dated: September 8, 2006        **RAY BOURHIS & ASSOCIATES**

9

10          By: _Kelly R Cn_

11                Ray Bourhis, Esq.
                Kelly L. Cowan, Esq.

12          Attorneys for Plaintiff, RANDALL M. WEST, D.O.

13

14

15

16

17

18

19

20

21

22

23

24

25                 IT IS SO ORDERED

26                 _Susan Illston_
                   Judge Susan Illston

27

28

                                2
            **STIPULATION FOR FILING OF AMENDED COMPLAINT**

Ray Bourhis, Esq. SBN 53196
Kelly L. Cowan, Esq.  SBN 239635
RAY BOURHIS & ASSOCIATES
1050 Battery Street
San Francisco, CA 94111
Tel: (415) 392-4660
Fax: (415) 421-0259

Attorneys for Plaintiff RANDALL M. WEST, D.O.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL M. WEST, D.O., ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARY SITUATED, | Case No.: C06-4517 SI |
| Plaintiffs, | SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL AND NEGLIGENT MISREPRESENTATION, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, CLASS ACTION INTENTIONAL AND NEGLIGENT MISREPRESENTATION, CLASS ACTION BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, CLASS ACTION BREACH OF CONTRACT, and JURY TRIAL REQUESTED |
| v. | |
| UNUMPROVIDENT CORPORATION, UNUM LIFE INSURANCE COMPANY OF AMERICA, and DOES 1 through 20, inclusive, | |
| Defendants. | |

Plaintiff RANDALL M. WEST, D.O., ("WEST") hereby amends his First Amended Complaint.  Plaintiff requests a trial by jury of all issues in this matter.

COMES NOW, Plaintiff and alleges as follows:

### I.
### BACKGROUND AND JURISDICTION RELELVANT TO ALL CAUSES OF ACTIONS

1.      Plaintiff WEST is and at all times relevant was a resident and citizen of California.

2.    Plaintiff alleges that defendant THE UNUM LIFE INSURANCE COMPANY OF AMERICA ("UNUM") is a wholly owned subsidiary of defendant UNUMPROVIDENT CORPORATION ("UNUMPROVIDENT") (hereinafter collectively "Defendants") and at all times herein mentioned was a corporation duly organized and existing under and by virtue of the laws of the State of Massachusetts, of Tennessee, and of Maine and is authorized to transact and is transacting the business of insurance in the State of California.

3.    Plaintiff alleges that UNUMPROVIDENT is a publicly owned corporation duly organized and existing under and by virtue of the laws of the State of Tennessee and is authorized to transact and is transacting the business of insurance in the State of California.

4.    Plaintiff alleges that UNUMPROVIDENT was formerly known as defendant PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY (hereinafter "PROVIDENT").

5.    Plaintiff alleges that on or about March 1997, defendant UNUM became a wholly owned subsidiary of PROVIDENT, now known as defendant UNUMPROVIDENT (hereinafter "Defendants").

6.    Plaintiff alleges that defendant UNUMPROVIDENT conducts its insurance operations through UNUM, PROVIDENT and through PAUL REVERE LIFE AND ACCIDENT INSURANCE COMPANY and other subsidiaries not named at this time.

7.    Plaintiff alleges that UNUMPROVIDENT is the parent-corporation of UNUM.

8.    Plaintiff alleges that UNUM has no employees and that UNUMPROVIDENT makes all claims decisions on those policies issued by UNUM before its merger with UNUMPROVIDENT.

9.    Plaintiff alleges that UNUMPROVIDENT became UNUM's claims

2

administrator after its acquisition of UNUM and as the claims administrator, made the decision to deny Plaintiff's claim.

10.     Plaintiff alleges that UNUMPROVIDENT acquired UNUM after the formation of his contract with UNUM.

11.     In the alternative, on information and belief, Plaintiff alleges that UNUMPROVIDENT and UNUM are joint venturers.

12.     In the alternative, on information and belief, Plaintiff alleges that he is a third-party creditor beneficiary of the contract between UNUMPROVIDENT and UNUM.

13.     The corporate headquarters of UNUMPROVIDENT and UNUM are at One Fountain Square, Chattanooga, Tennessee.

14.     As a result of the merger with UNUMPROVIDENT, UNUM became a UNUMPROVIDENT branded company.

15.     UNUMPROVIDENT owns the majority of the common stock of UNUM.

16.     As a result of the merger, UNUM ceased to have separate stationary and communications with UNUM insureds are now written on UNUMPROVIDENT letterhead.

17.     As a result of the merger, payments to UNUM insureds are made with UNUMPROVIDENT checks.

18.     As a result of acquisition of UNUM by UNUMPROVIDENT and the agreement between UNUM and UNUMPROVIDENT, Defendants each were (and continue to be) responsible to pay benefits under Plaintiff's POLICIES.  UNUM has this responsibility because it issued the policies.  Plaintiff is informed and believes and on that basis alleges that UNUMPROVIDENT assumed this obligation from UNUM by way of assignment or otherwise.  UNUMPROVIDENT also accepted and assumed the obligation to pay Plaintiff's insurance claim and to administer it on Plaintiff's behalf and for his benefit.

3

**CASE NO. C06-4517 SI**
**PLAINTIFF RANDALL WEST'S SECOND AMENDED COMPLAINT**

19.     Plaintiff herein incorporates paragraphs 1 through 18 above, and alleges that defendant UNUMPROVIDENT so used its control of defendant UNUM and/or used the corporate assets of UNUM as to render UNUM into UNUMPROVIDENT's corporate alter-ego.

20.     UNUMPROVIDENT is dependent upon payments from its wholly owned subsidiaries to pay dividends to its stockholders and to pay its expenses.

21.     Plaintiff alleges that defendant UNUM adopted and implemented UNUMPROVIDENT's, formerly PROVIDENT's, unfair claims handling practices and has utilized those unfair claims handling practices in its role as claims administrator for UNUM's individual disability income policies.

22.     Plaintiff alleges that after PROVIDENT's acquisition of UNUM, UNUM's claims adjusters became employees of UNUMPROVIDENT.

23.     Plaintiff alleges that after the merger of PROVIDENT and UNUM, PROVIDENT employees became employees of UNUMPROVIDENT.  Plaintiff further alleges that the unfair claims handling practices instituted at PROVIDENT continued after the merger of PROVIDENT and UNUM, which subsequently became known as UNUMPROVIDENT.

24.     The true names and capacities, whether individual, corporate, government, associate or otherwise of defendant DOES 1 through 20, inclusive, are unknown to Plaintiff who therefore sues said defendants by such fictitious names.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and, therefore, alleges that each of the defendants designated herein legally caused injury and damages proximately thereby to Plaintiff as herein alleged, and are therefore, responsible to the Plaintiff, for the damages herein requested.

///

///

## II.
## FIRST CAUSE OF ACTION
### (Breach of Contract against Defendants and Does 1-20.)

As and for a FIRST CAUSE OF ACTION, Plaintiff individually complains against Defendants and DOES 1 – 20 and alleges:

25.     Plaintiff incorporates by reference each and every paragraph of this Second Amended Complaint as though set forth in this cause of action.

26.     Defendant UNUM issued two identical POLICIES of insurance to plaintiff WEST on April 8, 1994 and May 20, 1994 (hereinafter "the POLICIES" and attached hereto as Exhibit A).   At the time of the issuance of the policies and at all relevant times, Plaintiff was an Osteopath practicing in family medicine.

27.     The number on the POLICIES is LAD277536.

28.     Throughout the period of said POLICIES, Plaintiff regularly paid premiums and performed each act required on his part to keep said POLICIES in full force and effect.  Plaintiff intended and expected thereby to be assured peace of mind and financial and economic security in the event of becoming disabled.

29.     Disability is defined in the POLICIES, in relevant part, as follows:
"'Total Disability' or 'totally disabled' mean:

    1.  injury or sickness restricts your ability to perform the material and substantial duties of your regular occupation to an extent that prevents you from engaging in your regular occupation; and

    2.  you are receiving medical care from someone other than yourself which is appropriate for the injury or sickness…"

"'Residual disability' and 'residually disabled' during the Elimination Period mean:

    1.  injury or sickness does not prevent you from engaging in your regular occupation, BUT does restrict your ability to perform

the material and substantial duties of your regular occupation:

    a.  for as long a time as you customarily performed them before the injury or sickness; or

    b.  as effectively as you customarily performed them before the injury or sickness; and

  2.  you are receiving medical care from someone other than yourself which is appropriate for the injury or sickness..."

"After the Elimination Period has been satisfied, 'Residual disability' and 'residually disabled' then mean that as a result of the same injury or sickness which caused you to satisfy the Elimination Period:

  1.  you experience at least a 20% loss of net income in your regular occupation; and

  2.  you are receiving medical care from someone other than yourself which is appropriate fore the injury or sickness..."

30.    Around December of 2000, as a result of a broken leg and a shoulder injury WEST began suffering from serious knee, shoulder, and back pain. He was diagnosed with left knee osteochondral defect and lateral femoral condyle, a ripped left rotatory cuff, ruptured discs at L3-4, a herniated disc at L5, and disc degeneration at T12-L1, T11-12, and C3-4 through C6-7.

31.    Thereafter, in 2001 and 2002 WEST underwent three knee surgeries including a Carnesale biopsy and a Carnasale implantation in an attempt to reconstruct his left knee. These surgeries were partially successful, although WEST's left knee still suffers from knee femoral condyle and chondromalacia.

32.    On April 27, 2001 WEST also underwent a surgery to repair his left rotator cuff. This surgery improved movement in his rotator cuff, but he still has restricted movement and pain in this shoulder.

33.    During and after the surgeries WEST was on short term disability for one

6

year and he ended his Osteopath practice in Richland, Washington.

34. On March 22, 2002 WEST moved to California and started a new practice. Upon returning to work he realized that the pain from his knee, shoulder, and back severely exacerbated the performance of his occupational duties. The amount of patients WEST could see in a day was substantially reduced because he was unable to physically continue at his pre-injury pace. In light of this decrease in functioning, WEST made a claim for long term disability benefits. At the time of his disability claim, Plaintiff's occupation was that of a practicing Osteopath in family medicine.

35. Around June of 2002 Defendants began paying WEST under the Residual Disability definition contained in his POLICIES.

36. At the time of the filing of his claim, and at all times thereafter, Plaintiff was entitled to receive disability benefits under the Total Disability provisions of his POLICIES, not under the Residual Disability definition. The difference in benefits under the two provisions over the course of the life of the policy is in the hundreds of thousands of dollars.

37. WEST's disabilities make it impossible for him to work full-time in his own-occupation. In addition to the debilitating pain, standing and lifting patients causes the knee to swell uncontrollably and causes irreparable damage to the femur. WEST has been told by his physicians that any attempt to work full-time will result in total knee replacement surgery and further damage to his back.

38. Despite Defendants' obligations to pay WEST the appropriate disability benefits pursuant to his POLICIES, Defendants have failed and refused to do so insisting on paying him under the lesser benefit provision.

39. In paying WEST the incorrect benefits due under the POLICIES and in forcing Plaintiff to obtain representation before paying him the benefits to which Plaintiff is due, Defendants and DOES 1 through 20 have breached and continue to breach the contract of insurance with Plaintiff.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as hereinafter set forth.

## III.
## SECOND CAUSE OF ACTION
### (Intentional/Fraudulent and Negligent Misrepresentation against Defendants and DOES 1-20)

As and for a SECOND CAUSE OF ACTION, Plaintiff individually complains against Defendants and DOES 1 – 20 and alleges:

40.    Plaintiff incorporates as though fully set forth herein, Paragraphs 1 through 39 of his Second Amended Complaint.

41.    In the sale of the POLICIES, Defendants falsely and fraudulently stated and represented to Plaintiff that they would pay and continue to pay him the appropriate disability benefits if Plaintiff became disabled from his own-occupation as that term is defined by the POLICIES and by the company.

42.    In the sale of the POLICIES, in 1994, agent of Defendants' agent, John W. Byrnes, falsely and fraudulently stated and represented to Plaintiff that Defendants would pay and continue to pay Plaintiff's disability benefits if Plaintiff became totally disabled from his own-occupation as that term is defined by the POLICIES and by California law.

43.    Moreover, Defendants did not intend to pay or to continue paying his benefits for total disability.  Defendants knew their statements regarding their intentions were false at the time they made them.

44.    Plaintiff relied on these false statements, which induced him to obtain coverage under the POLICIES, both at the outset of the POLICIES and each and every time Plaintiff made his premium payments thereafter under the POLICIES.

45.    Furthermore, at the time of Defendants' merger they adopted a new pattern and practice of processing claims, without informing Plaintiff of this change. Despite this fact, Defendants kept accepting Plaintiff's premium payments under the POLICIES.

46.     Defendants further concealed from Plaintiff the standard of review they intended to apply to the evaluation of Plaintiff's claim for benefits.

47.     The aforesaid representations were material and false in that Defendants misrepresented POLICIES provisions and California law.

50.     As a direct and proximate result of the aforementioned conduct of Defendants, and each of them, Plaintiff has been damaged in an amount in excess of the jurisdiction of this court, to be proven at trial.

51.     As a further direct and proximate result of the aforementioned conduct of said Defendants, and each of them, Plaintiff has suffered mental and emotional distress including, but not limited to, fear, aggravation, depression, humiliation and other highly unpleasant consequences including anxiety and has thereby incurred general damages in a sum in excess of the jurisdiction of this court to be determined according to proof at trial.

52.     As a further, direct and proximate result of the aforementioned conduct of Defendants, and each of them, Plaintiff has been obliged to expend or incur liability for costs of suit, attorneys' fees and related expenses in an amount not yet fully ascertained, but which will be submitted at the time of trial.

53.     In doing the acts set forth above, Defendants acted fraudulently, maliciously, oppressively, and in conscious disregard of Plaintiff's rights and in a despicable fashion.  Plaintiff is therefore entitled to punitive damages in a sum sufficient to punish Defendants so that such conduct will not take place again.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as hereinafter set forth.

## IV.
## THIRD CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing, Insurance Bad Faith against Defendants and Does 1-20)

As and for a THIRD CAUSE OF ACTION, Plaintiff individually complains against Defendants and DOES 1 – 20 and alleges:

9

54.     Plaintiff incorporates by reference each and every paragraph of the Second Amended Complaint as though set forth in this cause of action.

55.     At all times herein relevant, said Defendants agreed to act in good faith and deal fairly with Plaintiff when they entered into the POLICIES and accepted premiums.  Said Defendants thereby assumed a special relationship with and fiduciary-like obligations to Plaintiff, and agreed to abide by their said duties.  Nevertheless, Defendants refused and failed to act in good faith and deal fairly with Plaintiff, and breached said obligations, as is set forth more particularly below.

56.     In the absence of a reasonable basis for doing so, and with full knowledge and/or conscious disregard of the consequences, said Defendants have failed and refused to provide Plaintiff the appropriate benefits promised under the POLICIES and the laws of California.

57.     Said Defendants engaged and continue to engage in a course of conduct to further their own economic interest and in violation of their contractual and fiduciary obligations to Plaintiff, including, but not limited to:

a.  Unreasonably failing to pay the correct benefits of the POLICIES;

b.  Failing to provide promptly a reasonable explanation of the basis relied on in the insurance POLICIES for its failure to pay the correct benefits;

c.  Failing to pay the benefits which Plaintiff was entitled to receive based on his inability to perform the material and substantial duties of his own-occupation with reasonable continuity;

d.  Failing to place the financial interests of Plaintiff on an equal par with Defendants' own financial interests;

e.  Misrepresenting coverage and POLICIES provisions at issue, including the interpretation of "total disability", "residual disability", and "occupation" in its own-occupation POLICIES;

f.    Forcing Plaintiff to hire an attorney to obtain the benefits of the POLICIES due to him;

g.    Failing to conduct an investigation into the substantial and material duties of an Osteopath and deliberately misrepresenting the requirements for qualification as "totally disabled" under the terms of the POLICIES;

h.    Performing acts prohibited by the California Insurance Code § 790.03(a) and § 790.03(b); and

i.    Other such unreasonable conduct that is unknown at this time.

58.    Defendants' actions were all part of a pattern and practice of denying and terminating long-term disability income claims issued to professionals, on specious bases in order to reduce overall reserves and improve the company's financial condition.

59.    In doing the acts listed above, Defendants' acts breached the covenant of good faith and fair dealing, and constitute unfair claims settlement practices.

60.    Defendants continue to engage in the aforementioned acts, and said conduct and bad faith constitutes a continuing tort and continuing bad faith to Plaintiff, causing Plaintiff continuing damage as described herein beyond the date of the filing of this action.

61.    As a direct and proximate result of the aforementioned conduct of Defendants, and each of them, Plaintiff has been damaged in an amount in excess of the jurisdiction of this court, to be proven at trial.

62.    As a further direct and proximate result of the aforementioned conduct of said Defendants, and each of them, Plaintiff has suffered mental and emotional distress including, but not limited to, fear, aggravation, depression, humiliation and anxiety and has thereby incurred general damages in a sum in excess of the jurisdiction of this court to be determined according to proof at trial.

63.    As a further, direct and proximate result of the aforementioned conduct of

Defendants, and each of them, Plaintiff has been obliged to expend or incur liability for costs of suit, attorneys' fees and related expenses in an amount not yet fully ascertained, but which will be submitted at the time of trial.

64.     As a further, direct and proximate result of the aforementioned conduct of Defendants, Plaintiff has suffered other special damages in amounts according to proof at the time of trial which include, but are not limited to, his inability to replace the POLICIES under the terms and conditions represented to him.

65.     In doing the acts set forth above, Defendants acted fraudulently, maliciously, oppressively, and in conscious disregard of Plaintiff's rights and in a despicable fashion.  Plaintiff is therefore entitled to punitive damages in a sum sufficient to punish Defendants so that such conduct will not take place again.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as hereinafter set forth.

## V.
## FOURTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress Against Defendants and DOES 1 - 20)

As and for a FOURTH CAUSE OF ACTION, Plaintiff individually complains against Defendants and DOES 1 – 20 and alleges:

66.     Plaintiff incorporates by reference each and every paragraph of the Second Amended Complaint as though fully set forth in this cause of action.

67.     Defendants had access to Plaintiff's medical records, and were aware, at all relevant times, that Plaintiff was totally disabled from his own-occupation as an Osteopath.

68.     With full knowledge of Plaintiff's precarious condition, and of the fact that he was entitled to total disability benefits under the POLICIES, Defendants failed to pay him the correct benefits owed.

69.     Specifically, but not exclusively, Defendants failed to pay Plaintiff benefits for total disability by concealing the POLICIES provisions and ignoring

CASE NO. C06-4517 SI
**PLAINTIFF RANDALL WEST'S SECOND AMENDED COMPLAINT**

California law.

70.     In so doing, Defendants pursued an outrageous course of conduct, intentionally and/or recklessly, proximately causing Plaintiff severe emotional distress, shock and other highly unpleasant emotions.

71.     Defendants' failure to pay WEST under the correct definition and the stress created by being forced to meet the Defendants' monthly requirements for being paid under Residual Disability has caused WEST anxiety, nervousness, and depression. WEST was constantly worried that his benefits would cease so he pushed himself, at his health's expense, in an attempt to reach his pre-disability level of work.

72.     Defendants further made false statements regarding the duties of Plaintiff's occupation and the requirements of California law, all for the purposes of injuring Plaintiff, and increasing Defendants' profits, while inflicting severe emotional distress and avoiding a valid total disability claim.

73.     As a direct and proximate result of the aforementioned conduct of Defendants, Plaintiff has been damaged in the amount of the Total Disability benefits due and owing to him and continuing hereinafter until fully paid.

74.     As a further, direct and proximate result of the aforementioned conduct of Defendants, Plaintiff has suffered mental and emotional distress including, but not limited to, frustration, depression, nervousness, and anxiety and has thereby incurred general damages in an amount to be determined according to proof at time of trial.

75.     As a further, direct and proximate result of the aforementioned conduct of Defendants, Plaintiff has been obliged to expend and/or incur liability for costs of suit, attorneys' fees, and related expenses in an amount not yet fully ascertained, but which will be submitted at the time of trial.

76.     As a further, direct and proximate result of the aforementioned conduct of Defendants, Plaintiff has suffered other special damages in amounts according to proof at the time of trial which include, but are not limited to, the lack of availability of said sums

to him.

77.    The conduct of Defendants as described above was despicable and fraudulent and was further done willfully, oppressively, maliciously, and with conscious disregard of the rights of Plaintiff, and with the intent to annoy, harass or injure Plaintiff such that Plaintiff is entitled to a recovery of exemplary damages.

# VI.

## CLASS ALLEGATIONS

78.    Plaintiff brings these class action causes of actions on behalf of himself and one Class: a Fed.R.Civ.P. 23(b)(3) Class of individuals insured by Defendants or their subsidiaries with own-occupation disability income policies containing Cost of Living Adjustment Riders (hereinafter "COLA Riders") in the state of California.

79.    The members of the Class are so numerous that joinder is impracticable. While the exact number and identities of individual members of the Class presently is unknown, such information being in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process, Plaintiff avers, upon information and belief, considering the number of insureds covered by Defendants in California with similar policies, that there are at least thousands of members of the Class.

80.    Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and the members of the Class were damaged in the same way by the same wrongful conduct of Defendants.

81.    Plaintiff will fairly and adequately represent the interests of the Class. The interests of the Plaintiff are coincidental with and not antagonistic to those of the Class.

82.    Plaintiff is represented by counsel who are experienced and competent in the prosecution of complex class action litigation.

83.    Questions of law and fact common to the Class, include, but are not limited to the following:

      a.    Whether Defendants' misrepresented the terms of the COLA Rider

14

contained in their own-occupation disability income policies.

    b.   Whether Defendants acted in bad faith concerning the terms of the COLA Rider contained in their own-occupation disability income policies.

84.    The above-identified common questions predominate over questions, if any, that may affect only individual members of the Class.

85.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants, and the results of separate actions would, as a practical matter, also be dispositive of interests of other members of the Class who had no chance to protect their interests.

86.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the necessity of evidence, effort and expense that numerous individual actions would require.

# VII.
## FIFTH CAUSE OF ACTION
### (Intentional/Fraudulent and Negligent Misrepresentation against Defendants and DOES 1-20)

WHEREFORE, Plaintiff and Class members pray for relief as follows:

87.    Plaintiff, on behalf of himself and all Class members, incorporates by reference each and every paragraph of the Second Amended Complaint as though set forth in this cause of action.

88.    Plaintiff and Class members paid an additional annual premium for the COLA Rider, either from time the policy was purchased or from the time the COLA Rider was purchased.

89.    The COLA Rider contained in Plaintiff's and Class members' policies reads: "This rider becomes effective on the later of the Effective Date of the policy or the

Rider Date shown on page 3 of the policy." Therefore, the COLA Rider was to keep insureds' disability benefits current with inflation from the inception of their policy or COLA Rider, whichever was later.

90. In actuality Defendants, using another contradictory policy provision, started paying Plaintiff and other disabled Class members cost of living adjustments one year after becoming disabled.

91. Therefore, Plaintiff and Class members paid additional premiums for COLA Riders over the course of their policies that they did not receive. As example, Plaintiff obtained his COLA Rider in 1994 and became disabled in 2002. Therefore, he paid extra premiums from 1994 until 2002 for a cost of living adjustment he did not receive.

92. Defendants did not intend to pay Plaintiff and Class members cost of living adjustments from the inception of their policies or COLA Riders. At the time said representations were made by Defendants, Defendants were acting with the intent to deceive and defraud Plaintiff and Class members, and in bad faith.

93. Said representations of material fact were false, in that Defendants did not intend and do not intend to provide Plaintiff and Class members with cost of living adjustments over the entire life of their policies.

94. Plaintiff and Class members relied on the fact that they were purchasing a COLA Rider that began at the inception of their policy or COLA Rider. They were induced to obtain the COLA Rider and pay an extra annual premium.

95. The aforesaid representations were material and false in that Defendants misrepresented policy provisions and California law.

96. Plaintiff and Class members suffered and continue to suffer substantial economic and non-economic damages as a direct result of Defendants' misrepresentation, including, but not limited to aggravation, inconvenience and needless, time-consuming, expensive litigation.

1

2   97.    In addition, Plaintiff and Class members incurred foreseeable damages as

3   a direct result of Defendants' misrepresentation, including, but not limited to the amount

4   of additional monies owed under the COLA Rider as represented.

5   98.    In doing the acts set forth above, Defendants acted fraudulently,

6   maliciously, oppressively, and in conscious disregard of Plaintiff's rights and Class

7   members' rights and in a despicable fashion.  Plaintiff and Class members are therefore

    entitled to punitive damages.

8
                              **VIII.**
9                    **SIXTH CAUSE OF ACTION**
        **(Breach of the Covenant of Good Faith and Fair Dealing, Insurance**
10               **Bad Faith against Defendants and Does 1-20)**

11  WHEREFORE, Plaintiff and Class members pray for relief as follows:

12  99.    Plaintiff, on behalf of himself and all Class members, incorporates by

13  reference each and every paragraph of the Second Amended Complaint as though set

14  forth in this cause of action.

15  100.   Plaintiff and Class members paid an additional annual premium for the

16  COLA Rider, either from time the policy was purchased or from the time the COLA

17  Rider was purchased.

18  101.   The COLA Rider contained in Plaintiff's and Class members' policies

19  reads: "This rider becomes effective on the later of the Effective Date of the policy or the

20  Rider Date shown on page 3 of the policy."  Therefore, the COLA Rider was to keep

21  insureds' disability benefits current with inflation from the inception of their policy or

22  COLA Rider, whichever was later.

23  102.   In actuality Defendants, using another contradictory policy provision,

24  started paying Plaintiff and other disabled Class members cost of living adjustments one

25  year after becoming disabled.

26  103.   Therefore, Plaintiff and Class members paid additional premiums for

27  COLA Riders over the course of their policies that they did not receive.  Specifically,

28  Plaintiff obtained his COLA Rider in 1994 and became disabled in 2002.  Therefore, he

17
**CASE NO. C06-4517 SI**
**PLAINTIFF RANDALL WEST'S SECOND AMENDED COMPLAINT**

paid extra premiums from 1994 until 2002 for a cost of living adjustment he did not receive.

104.    In doing the acts listed above, Defendants' acts breached the covenant of good faith and fair dealing.

105.    Defendants continue to engage in the aforementioned acts, and said conduct and bad faith constitutes a continuing tort and continuing bad faith to Plaintiff and Class members, causing Plaintiff and Class members continuing damage as described herein beyond the date of the filing of this action.

106.    Plaintiff and Class members suffered and continue to suffer substantial economic and non-economic damages as a direct result of Defendants' bad faith, including, but not limited to aggravation, inconvenience and needless, time-consuming, expensive litigation.

107.    In addition, Plaintiff and Class members insured foreseeable damages as a direct result of Defendants' bad faith, including, but not limited to the amount of additional monies owed under the COLA Rider as represented.

108.    In doing the acts set forth above, Defendants acted fraudulently, maliciously, oppressively, and in conscious disregard of Plaintiff's rights and Class members' rights and in a despicable fashion.  Plaintiff and Class members are therefore entitled to punitive damages.

## IX.
## SEVENTH CAUSE OF ACTION
### (Breach of Contract against Defendants and Does 1-20.)

WHEREFORE, Plaintiff and Class members pray for relief as follows:

109.    Plaintiff, on behalf of himself and all Class members, incorporates by reference each and every paragraph of the Second Amended Complaint as though set forth in this cause of action.

110.    Plaintiff and Class members paid an additional annual premium for the COLA Rider, either from time the policy was purchased or from the time the COLA Rider was purchased.

CASE NO. C06-4517 SI
PLAINTIFF RANDALL WEST'S SECOND AMENDED COMPLAINT

111. The COLA Rider contained in Plaintiff's and Class members' policies reads: "This rider becomes effective on the later of the Effective Date of the policy or the Rider Date shown on page 3 of the policy." Therefore, the COLA Rider was to keep insureds' disability benefits current with inflation from the inception of their policy or COLA Rider, whichever was later.

112. In actuality Defendants, using another contradictory policy provision, started paying Plaintiff and other disabled Class members cost of living adjustments one year after becoming disabled.

113. Therefore, Plaintiff and Class members paid additional premiums for COLA Riders over the course of their policies that they did not receive.

114. Notwithstanding its obligation to do so, Defendants and Does 1-20 have failed and refused, and continue to fail and refuse, to pay Plaintiff and Class members the appropriate benefits to which they are entitled under their policies. Further Defendants have forced Plaintiff and Class members to obtain representation before paying them the entire benefits to which they are due. Said actions constitute a material breach and an ongoing continuing material breach of the policies.

115. As a direct and proximate result of said breach, Plaintiff and Class members have been injured and damaged in an amount to be determined according to proof at trial.

WHEREFORE, Plaintiff and Class members pray judgment against Defendants, and each of them, as hereinafter set forth.

## PRAYER FOR RELIEF
## AS TO THE FIRST CAUSE OF ACTION:

WHEREFORE, Plaintiff prays for relief as follows:

1. General damages for the failure to provide the promised benefits under the subject contract of insurance in a sum to be determined at the time of trial, and a return of the premiums which Defendants have required Plaintiff to pay to keep the POLICIES in force.

CASE NO. C06-4517 SI
PLAINTIFF RANDALL WEST'S SECOND AMENDED COMPLAINT

2.      For such other and further relief as the Court deems just and proper.

## AS TO THE SECOND, THIRD, and FOURTH, CAUSES OF ACTION:

WHEREFORE, Plaintiff prays for relief as follows:

3.   General damages for mental and emotional distress and other incidental damages in a sum to be determined at trial;

4.      Special damages in an amount according to proof;

5.      Punitive and exemplary damages;

6.      For costs of suit herein incurred;

7.      For reasonable attorneys' fees; and

8.      For such other and further relief as the Court deems just and proper.

## AS TO THE FIFTH. SIXTH, and SEVENTH CAUSE OF ACTION:

WHEREFORE, Plaintiff and Class members pray for relief as follows:

9.      Certification of a monetary relief Class pursuant to Fed.R.Civ.P 23(b)(3) seeking recovery of compensatory damages for additional monies owed under the COLA Rider which Defendants refused to pay to policyholders;

10.     Compensatory damages for Defendants' bad faith;

11.     Punitive damages;

12.     Reasonable attorneys' fees;

13.     Pre- and post – judgment interest;

14.     Cost of suit; and

15.     For such other and further relief as the Court deems just and proper.


Dated: September 8, 2006                    **RAY BOURHIS & ASSOCIATES**


                                            By: _____
                                                Ray Bourhis, Esq.
                                                Kelly L. Cowan, Esq.
                                            Plaintiff, RANDALL M. WEST, D.O.

---
20
**CASE NO. C06-4517 SI**
**PLAINTIFF RANDALL WEST'S SECOND AMENDED COMPLAINT**

**PROOF OF SERVICE**

*Randall M. West. D.O. v. UnumProvident Corporation, The Commissioner of the California Department of Insurance, and Does 1 through 20, Inclusive U.S. District Court, Northern District of California, Case No. C06-4517 SI*

I am a resident of the State of California, over the age of eighteen years and not a party to this action. My business address is 1050 Battery Street, San Francisco, California 94111. On September 8, 2006, I will serve the following documents:

STIPULATION FOR FILING OF AMENDED COMPLAINT

in the manner as provided by Rule 5(b) of the Federal Rules of Civil Procedure by placing a true copy of the document(s) listed above, enclosed in a sealed envelope, addressed as set forth below, for collection and mailing on the date and at the business address shown above following our ordinary business practices. I am readily familiar with this business practice for collection and processing of correspondence for mailing with the United States Postal Service. On the same day that a sealed envelope is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service with postage fully prepaid. I am employed in the county where the mailing described below occurred, and am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. I placed a true copy of the specified document(s) in a sealed envelope(s) with postage thereon fully prepaid. The envelope(s) will be deposited with the United States Postal Service on this day in the ordinary course of business in San Francisco, California.

**UNUMPROVIDENT CORPORATION:**
Thomas M. Herlihy, Esq.
Sean P. Nalty, Esq.
Thomas K. Hockel, Esq.
KELLY, HERLIHY & KLEIN
44 Montgomery St., Ste. 2500
San Francisco, CA 94104
Phone: (415) 951-0535
Fax:    (415) 391-7808
Email: herlihy@kelher.com
Email: nalty@kelher.com

**(X) (FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed at San Francisco, California, on September 8, 2006.

Mary M. Martin

---

3

**STIPULATION FOR FILING OF AMENDED COMPLAINT**